In re POSEIDON POOL & SPA RECREATIONAL, INC., Debtor.

Andrew M. Thaler, Trustee, Estate of Poseidon Pool & Spa Recreational, Inc., Plaintiff,

v.

Estate of Vincent J. Arbore, Deceased, Diane Arbore, in her capacity as Executrix of the Estate of Vincent J. Arbore, Diane Arbore, Ann Arbore, Peter Arbore, Jayvin Arbore, Allison Arbore, Michael Arbore, Katherine Arbore, Alan Arbore, James Arbore, Rosa Dinicolo and Rita Cannillo, Defendants.

Bankruptcy No. 805–87603–478.
Adversary No. 806–8222–478.

United States Bankruptcy Court, E.D. New York.

July 3, 2008.

Andrew M. Thaler, Esq., Thaler & Gertler, LLP, East Meadow, NY, for Plaintiff Trustee.

Joel Lewittes, Esq., Jaspan Schlesinger Hoffman LLP, Garden City, NY, for Defendants.

## MEMORANDUM DECISION

DOROTHY EISENBERG, Bankruptcy Judge.

Before the Court is the Plaintiff Trustee's motion to dismiss with prejudice the Defendants' counterclaims for contractual indemnification under an agreement between the Debtor and Vincent J. Arbore ("Vincent Arbore") and for common law indemnification. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334. This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O) and 11 U.S.C. §§ 541, 544, 548 and 550, and § 270 et seq. of the New York Debtor and Creditor Law and § 513 of the New York Business Corporation Law. The following constitutes the Court's findings of fact and conclusions of law as mandated by Bankruptcy Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### FACTS

Vincent Arbore was an employee, officer and director of the Debtor. On or about May 24, 2002, Vincent Arbore, the Debtor and the Debtor's other shareholders entered into an agreement pursuant to which the Debtor agreed to redeem Vincent Arbore's shares in the Debtor in exchange for $450,000.00 (the "Redemption Agreement"). The Debtor paid Vincent Arbore $50,000.00 upon execution of the Redemption Agreement and executed a promissory note in the amount of $400,000.00 (the "Note") which was secured by the stock repurchased by the Debtor and a Guarantee and Pledge Agreement executed by the Debtor and the other shareholders of the Debtor. The Note provided, *inter alia,* that the Debtor would pay Vincent Arbore in installments of $6,500 per month with interest commencing on June 24, 2002 and ending no later than May 24, 2007 with respect to Vincent Arbore's sale of the stock. The Debtor made payments under the Note from June 2002 to August 2005. In addition, the Debtor agreed to reimburse Vincent Arbore for repairs at the Debtor's former facility in the amount of $7,500. In connection with the Redemption Agreement, Vincent Arbore resigned his position as an officer, employee and director of the Debtor on May 24, 2002. Vincent Arbore subsequently passed away in September of 2002 and his estate succeeded to his interest in the Redemption Agreement, the Note and the Guarantee and Pledge Agreement.

On September 6, 2005, Textron Financial Corporation ("Textron") commenced an action in New York state court against the Debtor, Ann Arbore and the estate of Vincent Arbore (the "Arbores"), and the other shareholders of the Debtor with respect to financing Textron extended to the Debtor and the guaranty obligations allegedly executed by the Abores and the other shareholders of the Debtor in favor of Textron with respect to such financing (the "Textron Action"). On or about October 25, 2005, the Arbores filed an answer in the Textron Action alleging, inter alia, that they did not execute any guaranty obligation to Textron and that Joseph Gartner, one of the other shareholders of the Debtor, had signed their names on the guaranty obligations. The Textron Action was eventually dismissed with prejudice and without fees and costs with respect to the Arbores pursuant to a Stipulation of Dismissal, dated June 7, 2006. The Stipulation of Dismissal was approved by the state court on September 25, 2006.

The Debtor filed for chapter 11 bankruptcy relief on October 7, 2005 (the "Petition Date") and commenced this adversary proceeding on June 8, 2006 against the

estate of Vincent Arbore seeking to avoid $65,000.00 in transfers made under the Redemption Agreement and Note as fraudulent conveyances. The Debtor's chapter 11 case was converted to one under chapter 7 on September 21, 2006 and the Chapter 7 Trustee was appointed. The Trustee filed an Amended Complaint on March 30, 2007 which increased the amount sought to be recovered from $65,000.00 to $266,500.00 and to add an additional cause of action against the estate of Vincent Arbore. The Trustee then filed a Second Amended Complaint on September 10, 2007 to add the other Defendants in this adversary proceeding as these defendants are the distributees or beneficiaries of the estate of Vincent Arbore. The Defendants filed an Answer to the Second Amended Complaint on October 3, 2007 asserting four counterclaims against the Plaintiff based on contractual and common-law indemnification rights.

In their counterclaims the Defendants seek 1) contractual indemnification for any damages, including attorneys' fees, sustained by the Defendants as a result of the Textron Action; 2) common-law indemnification for any damages, including attorneys' fees, sustained by the Defendants as a result of the Textron Action; 3) contractual indemnification for any damages, including attorneys' fees, sustained by the Defendants as a result of any state or federal court action, including this bankruptcy and this adversary proceeding; and 4) common-law indemnification for any damages, including attorneys' fees, sustained by the Defendants as a result of any state or federal court action, including this bankruptcy and this adversary proceeding.

With respect to the contractual indemnification claims, the Defendants based their claims on Section 5 of the Note which was executed in connection with and arises out of the Redemption Agreement. Section 5 of the Note states as follows:

*Expenses.* If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including reasonable attorneys' fees, and all expenses in connection with the protection or realization of the collateral securing this note or the enforcement of any guaranty hereof incurred by the holder hereof on account of such collection, such costs and expenses will include all costs, expenses and reasonable attorneys' fees incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway materially and adversely affects the exercise by the holder hereof of its rights and remedies under this Note or under any other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein.

The Court notes that Article 8.03(a) of the Redemption Agreement provides that:

The Company and each Manager will defend and indemnify Seller and hold him harmless from and against, any and all Losses suffered, incurred or sustained by Seller, or to which he becomes subject, resulting from, arising out of, or relating to (i) any misrepresentation, breach of warranty or nonfulfillment or, or (sic) failure to perform, any covenant or agreement on the part of the Company or any Member contained in this Agreement, (ii) any breach of his or its representations, warranties, covenants or agreements hereunder or (iii) arising from *Martinez v. Poseidon Pool & Spa Recreational, Inc.,* Index Number

15707–01, Queens County, and the third-party action entitled *Poseidon Pool & Spa Recreational, Inc. vs Vincent Arbore* (the *"Martinez Case"*).

The Managers are defined in the Redemption Agreement to be Timothy Greco, Kathleen Gartner and Joseph Gartner, who were the remaining shareholders of the Debtor at the time the Redemption Agreement was executed.

On December 11, 2007, the Trustee brought this motion to dismiss the Defendants' counterclaims with prejudice pursuant to the Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. With respect to the first and third counterclaims, which are based on indemnification rights granted under the Note and Redemption Agreement, the Trustee argues that the indemnification provisions in the Note and Redemption Agreement do not cover third party actions that are unrelated to the collection of payments under the Note and Redemption Agreement, such as the Textron Action. More importantly, the Trustee argues that the Note and the Redemption Agreement are unenforceable with respect to any payment obligations, claims or damages arising post-petition under N.Y. Bus. Corp. Law § 513(a) because the Debtor was insolvent as of the Petition Date. With respect to the first counterclaim, because the Textron Action was dismissed as against the Arbores, the Defendants incurred only attorneys' fees and costs. The Trustee claims that because those fees and costs were incurred during the post-petition period the fees and costs would not be recoverable under N.Y. Bus. Corp. Law § 513(a). Likewise, with respect to the third counterclaim, any indemnification claim sought by the Defendants under the Note and Redemption Agreement relating to damages and costs incurred in the bankruptcy case and in this adversary proceeding would have arisen post-petition and such fees and costs would not be recoverable. Accordingly, the Trustee argues that the Defendants will be unable to recover any damages or attorneys' fees and costs sustained by them post-petition pursuant to the Note and Redemption Agreement.

The Defendants oppose the Trustee's motion to dismiss the first and third counterclaims on various grounds. The Defendants argue, and the Trustee does not contest, that so long as a payment was made to the Defendants while the Debtor was solvent, the relevant agreements were enforceable at the time of such payment even though the Debtor may have been insolvent as of the Petition Date and may continue to be insolvent. In particular, the Defendants argue that Note and Redemption Agreement remain enforceable because the test under N.Y. Bus. Corp. Law § 513(a) requires not only that the Debtor be insolvent but also a payment be made during the Debtor's insolvency in order to render a share repurchase agreement unenforceable. Even if the Debtor is insolvent post-petition, no payment under the Note and Redemption Agreement has been made post-petition. Therefore, the Defendants maintain that until the Trustee makes a payment under the Note and Redemption Agreement, the Note and Redemption Agreement remain enforceable.

The Defendants also assert that pursuant to the Supreme Court decision in *Travelers Casualty Surety Co. of America v. Pacific Gas and Electric Co.,* —— U.S. ——, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007), the Defendants' indemnification claims for attorney fees are viable as a matter of law and are not subject to a motion to dismiss based on the Debtor's financial situation at the time of the filing. In addition, the Note and Redemption

Agreement contain severability clauses, the indemnification provisions remain valid even if the Debtor's agreement to purchase the stock is no longer enforceable under New York law.

With respect to the second and fourth counterclaims for common-law indemnification, the Trustee argues that there was no finding of liability on the part of, or damages sustained by, the Defendants in the Textron Action and the Defendants have not alleged any wrong which would give rise to an implied contract and trigger common-law indemnification with respect to this bankruptcy and adversary proceedings. Accordingly, the Trustee argues that the only claims that the Defendants have against the bankruptcy estate under the second and fourth counterclaims are for attorneys' fees and costs which he argues are not compensable under common law.

The Court conducted hearings on January 15, 2008, March 11, 2008, May 15, 2008 and June 24, 2008 to consider the oral arguments in support of and in opposition to the Trustee's motion to dismiss, which included a scheduled evidentiary hearing on May 15, 2008 on the issue of the Debtor's solvency post-petition. Each party submitted numerous supplemental memoranda of law and supporting documentary evidence to the Court and had several opportunities to respond to arguments raised by opposing counsel.

There is no dispute as to the material facts relating to the issues concerning the Defendants' first and third counterclaims.

## DISCUSSION

### I. *General.*

Under Federal Rule of Civil Procedure 12(b)(6), a court may consider matters outside the pleadings and treat a motion to dismiss as one for summary judgment pro-

vided that all parties shall be given a reasonable opportunity to present all material made pertinent to such motion by Rule 56 of the Federal Rules of Civil Procedure. *In re G. & A. Books, Inc.,* 770 F.2d 288, 294–95 (2d Cir.1985); *Hall v. Brown,* 489 F.Supp.2d 166 (N.D.N.Y.2007). In this case, both parties have submitted evidence other than the pleadings in support of and in opposition to the Motion, including supplemental memoranda on the issue of whether the Debtor is and remains insolvent as of the Petition Date. Each party had an opportunity to respond to oral arguments and submissions made by opposing counsel regarding whether the Defendants' counterclaims state claims for relief may be granted. Accordingly, the Court deems the Trustee's motion to dismiss the Defendants' counterclaims to be one for summary judgment.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure as made applicable by Federal Rule of Bankruptcy Procedure 7056, the Court may award summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

When no genuine triable issues of material fact exist, the moving party is entitled to judgment as a matter of law and summary judgment should be granted. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11–12 (2d Cir.1986). The mere production of some evidence in support of the opposing party's position will not justify denial of a summary judgment motion, unless the court finds that there is evidence upon which a jury can properly proceed to find a verdict for the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). Instead, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). A court must always "resolve ambiguities and draw reasonable inferences against the moving party." *Knight v. United States Fire Ins. Co.,* 804 F.2d at 11. However, the opposing party may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Id.,* 804 F.2d at 12.

## II. *First and Third Counterclaims for Contractual Indemnification.*

■ Whether the Defendants have viable counterclaims for indemnification under the Note and Redemption Agreement for any damages incurred post-petition with respect to the Textron Action or this bankruptcy case depends upon whether New York law would permit the Trustee to indemnify the Defendants from the bankruptcy estate for any such post-petition damages. Pursuant to N.Y. Bus. Corp. Law § 513(a), "the shares of a corporation may not be purchased by the corporation, or, if redeemable, convertible or exchangeable shares, may not be redeemed, converted or exchanged, in each case for or into cash, other property, indebtedness or other securities of the corporation (other than shares of the corporation and rights to acquire such shares) *if the corporation is then insolvent or would thereby be made insolvent. Shares may be purchased or redeemed only out of surplus.*" (Emphasis added). Pursuant to N.Y. Bus. Corp. Law § 102(a)(8), "insolvent" means being unable to pay debts as they become due in the usual course of the debtor's business. Accordingly, "payments *may not be made* in a situation of insolvency even though ... the agreement itself may have been made when the corporation had a surplus sufficient to cover the entire purchase price, and title to the stock has been transferred." (Emphasis added). *In re Flying Mailmen Service, Inc.,* 539 F.2d 866, 869 (2d Cir.1976)(citing *Nakano v. Nakano McGlone Nightingale Advertising, Inc.,* 377 N.Y.S.2d 996, 84 Misc.2d 905 (Sup.Ct.N.Y.Co.1975)). *See also, Le Café Creme, Ltd. v. Le Roux et. al. (In re Le Café Creme, Ltd.),* 244 B.R. 221, 244 (Bankr.S.D.N.Y.2000).

The rationale for this statute is that the equities favor general unsecured creditors over shareholders or former shareholders. *In re Dino & Artie's Automatic Transmission, Co., Inc.,* 68 B.R. 264, 268 (Bankr. S.D.N.Y.1986). Where the debtor corporation is insolvent, any payment to a former shareholder would not come out of surplus and would adversely affect the interest of the debtor's general unsecured creditors. · *Id. See also, In re Fechheimer Fishel Co.,* 212 F. 357, 364 (2d Cir. 1914)("when a corporation becomes insolvent, a trust arises in respect to the administration of its assets for the benefit of its creditors. Hence when a corporation buys its own stock payment cannot be made which upon insolvency belong to its creditors instead of to its stockholders.")(Internal citations omitted). Indeed, bankruptcy courts recognize that the underlying claim arising out of an insolvent corporation's stock repurchase obligation may be subordinated to the claims of the general creditors pursuant to 11 U.S.C. § 510. *In re Dino & Artie's Automatic Transmission, Co., Inc.,* 68 B.R. at 268 (finding that "the underlying claim arising out of an insolvent corporation's stock repurchase obligation must be subordinated in favor of the debtor corporation's general creditors in accordance with the principles of equitable subordination expressed in 11 U.S.C. § 510(c)(1)")(citing *La Grand Steel Products Co. v. Goldberg (In re Poole, McGonigle & Dick, Inc.),* 796 F.2d 318,

323 (9th Cir.1986); *Liebowitz v. Columbia Packing Company,* 56 B.R. 222 (D.Mass. 1985); *In re Micro–Acoustics Corp.,* 34 B.R. 279 (Bankr.S.D.N.Y.1983)).

■ Moreover, the relevant case law interpreting N.Y. Bus. Corp. Law § 513(a) focuses on the entire agreement, not on certain provisions of the agreement, when the courts consider the issue of enforceability. In *In re Dino & Artie's Automatic Transmission, Co., Inc.,* the bankruptcy court held that the stock repurchase agreement was unenforceable upon the corporation's insolvency, not just the provision in the agreement relating to the purchase of the stock by the corporation. 68 B.R. at 269. None of the cases cited by either party supports a finding that despite the unenforceability of the agreement to purchase stock, the ancillary provisions in the agreement (such as indemnification clauses) remain viable or survive the unenforceability of the entire agreement. Indeed, "illegal provisions constituting the main purpose of a single and indivisible contract cannot be expunged, leaving the balance of the contract in effect, as secondary valid provisions fall with them.... Where the main objective of an agreement is illegal, courts will not sever and enforce incidental legal clauses." N.Y. Jur.2d Contracts § 206.

■ In addition, any mortgage or note given by the corporation to secure the repurchase obligation under a stock repurchase agreement which is rendered unenforceable as a result of the corporation's insolvency is also rendered unenforceable. *See In re Flying Mailmen Service, Inc.,* 539 F.2d at 868–69 (finding where a stock purchase agreement is no longer enforceable due to the insolvency of the corporation, any security interest created by the agreement is no longer enforceable as well); *In re Dino & Artie's Automatic Transmission Co., Inc.,* 68 B.R. at 269 (finding that because the underlying repurchase obligation is unenforceable under N.Y. Bus. Corp. Law § 513(a), it follows that the mortgage given to secure the underlying obligation is also unenforceable).

■ With respect to the motion to dismiss the Defendants' first and third counterclaims before the Court, the Trustee has the burden of proving insolvency of the Debtor as of the Petition Date and that the Debtor was insolvent for the relevant post-petition period. *Nakano v. Nakano McGlone Nightingale Advertising, Inc.,* 377 N.Y.S.2d at 998. In determining insolvency, the Trustee requests that the Court take judicial notice of the Debtor's schedules of assets and liabilities filed in this bankruptcy case, the Debtor's federal income tax return for the 2005 tax year and the Debtor's claims register to find the Debtor insolvent as of the Petition Date and that the Debtor continues to be insolvent as it has liquidated most of its tangible assets during the bankruptcy proceeding and is no longer an operating entity.

A review of the Debtor's bankruptcy schedules show that on the Petition Date, the Debtor had $541,501.62 in assets and $3,941,593.26 of liabilities of which $1,443,059.41 was secured indebtedness, $103,000.00 was unsecured indebtedness that was entitled to priority and $2,395,533.85 was general unsecured indebtedness. The Debtor's 2005 federal income tax return shows a $3,749,378.00 ordinary business loss. The creditor claims register in this bankruptcy case reflects a total of $10,684,086.43 in filed claims, excluding professional fee applications. Presently there is $659,192.73 in the Trustee's Estate Account subject to be increased by $298,000.00 pursuant to a settlement reached in an unrelated adversary proceeding. The Trustee does not antici-

pate any other significant recoveries in this case.

Based upon the foregoing information, the Court finds that the Trustee has sufficiently established the rebuttable presumption that the Debtor was unable to pay its debts as they became due on the Petition Date, that the Debtor was insolvent as of the Petition Date and that the Debtor continues to be insolvent. *In re Dino & Artie's*, 68 B.R. at 267. Although the Defendants do not concede the Debtor's insolvency as of the Petition Date, the Defendants have not presented any evidence to rebut the Debtor's bankruptcy schedules, the Debtor's 2005 tax return or the claims register to show that the Debtor was not insolvent as of the Petition Date and continues to be insolvent. At the March 11, 2008 hearing, the Court scheduled an evidentiary hearing on the issue of the Debtor's solvency during the post-petition period. The evidentiary hearing was eventually returnable on May 15, 2007 and the Defendants had two months to conduct whatever discovery was necessary on the issue of the Debtor's solvency for the post-petition period. Based upon correspondence and memoranda filed by the Trustee, the Defendants were aware that the Trustee intended to rely on the Debtor's bankruptcy schedules, tax return and claims register to establish the Debtor's insolvency as of the Petition Date and had an additional opportunity after the May 15, 2008 hearing to respond to the Trustee's submissions. Rather than presenting any evidence on the issue of the Debtor's solvency post-petition, the Defendants maintain that because the Note and Agreement remain valid until a payment is made by the Trustee, any showing of insolvency by the Debtor as of the Petition Date is irrelevant and inappropriate.

As discussed above, the Court finds that the issue of the Debtor's insolvency as of the Petition Date to be relevant to the viability of the Defendants' first and third counterclaims. As the Defendants were give an opportunity to conduct discovery and present evidence regarding the issue of the Debtor's insolvency post-petition and have failed to do so, the Court finds that there is no genuine triable issue of material fact regarding the Debtor's insolvency as of the petition date and any time post-petition. The Court finds that it is clear and undisputed that the Debtor was and continues to be insolvent post-petition. This finding of insolvency, however, does not apply to the prepetition period. A genuine issue of fact concerning the Debtor's solvency when payments were made under the Redemption Agreement and Note still exists. The Trustee must still demonstrate that the Debtor was insolvent at the time of the prepetition transfers under the Note and Redemption Agreement for any recovery of those prepetition payments.

While the Defendants maintain that under N.Y. Bus. Corp. Law § 513(a) the Note and Redemption Agreement remain valid and enforceable despite the insolvency of the corporation so long as the Trustee has not made a payment under the Note and Redemption Agreement and that a share repurchase agreement which may be unenforceable at a certain point in time can become enforceable at a later date should the corporation achieve a capital surplus, the Defendants must accept the reality that the Debtor will never have a capital surplus as the Debtor is in liquidation, its debts have become due and owing and there are insufficient assets to pay its liabilities in full. Accordingly, the Trustee could never make a payment under the Redemption Agreement as of the Petition Date and for the entire post-petition period without violating N.Y. Bus. Corp. Law § 513(a). Therefore, the Redemption Agreement cannot be enforced

with respect to the Debtor for any payment obligation that would arise post-petition and the Redemption Agreement must be deemed null and void with respect to the Debtor for all post-petition payment obligations.

As the rights and obligations under Note, and Guarantee and Pledge Agreement rely upon the enforceability of the Redemption Agreement, the Note and Guarantee and Pledge Agreement are similarly unenforceable as to the Debtor with respect to any payment obligations for damages incurred by the Defendants that arises post-petition. The entire thrust of the Redemption Agreement, the Promissory Note and the Guaranty concerns the sale of stock by Vincent Arbore to the Debtor. The purpose of these agreements was to facilitate the sale of Vincent Arbore's stock by giving Vincent Arbore a promissory note and a security interest to secure the payment obligation under the Redemption Agreement. As stated in Section 6 of the Note, the "Note is referred to and arises out of the Redemption Agreement." This Note is secured by a Guarantee and Pledge Agreement, of even date herewith (the "Security Agreement"), among [the Debtor], [Vincent Abore] and the Managers. This Note is subject to all provisions in the Redemption Agreement, the Pledge Agreement and the other Operative Agreements...." Because the Redemption Agreement is deemed unenforceable with respect to any damages arising during the post-petition period, any rights under these ancillary agreements are also deemed unenforceable against the Debtor during the post-petition period.

■ However, the unenforceability of the Redemption Agreement and Note with respect to the Debtor does not preclude the Defendants from asserting whatever rights and remedies available to them under the Note, the Redemption Agreement and the Guarantee and Pledge Agreement and applicable state law against the other shareholders who were parties to those agreements. Indeed, the Defendants have already obtained default judgments against Kathleen Gartner, Joseph Gartner and Timothy Greco pursuant to the Guarantee and Pledge Agreement executed in connection with the Note and Redemption Agreement pursuant to a state court order dated January 14, 2008.

■ In addition, the indemnification provisions in the agreements are not severable and do not survive the unenforceability of the agreements post-petition. The indemnification rights at issue under these agreements were intended to protect the ability of Mr. Arbore (and his successors in interests) to collect payment in connection with Mr. Arbore's sale of the stock back to the Debtor and thus, indemnification rights the Defendants seek to assert are incidental to the agreement to sell the stock to the Debtor. Moreover, although the indemnification claims the Defendants seek to assert are not identical to the underlying claim for the unpaid balance of the stock repurchase agreement, enforcing the indemnification provisions would have the same effect of providing a benefit to an equity holder at the expense of the general unsecured creditors where a debtor is insolvent. Therefore, these rights do not survive and the Defendants may not now assert a claim against the bankruptcy estate for post-petition damages incurred in the Textron Action; in this adversary proceeding; in this bankruptcy case or any other proceeding against the Debtor under these agreements.

With respect to the issue of indemnification of attorneys' fees and costs the Defendants incurred in the Textron Action and in any state or federal court proceeding, including the proceedings before this

court, the Defendants argue that the Supreme Court decision in *Travelers Casualty Surety Co. of America v. Pacific Gas and Electric Co.*, —— U.S. ——, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) (*"Travelers "*) supports their argument that the indemnification claims for attorney fees under the Redemption Agreement and Note remain viable despite the Debtor's financial situation at the time of the filing. In *Travelers,* the Supreme Court determined that the "Fobian Rule" (i.e. whether the Bankruptcy Code disallows contract-based claims for attorneys' fees based solely on the fact that the fees at issue were incurred litigating issues of bankruptcy law) has no support in federal bankruptcy law. The Supreme Court recognized that a creditor's claim for attorneys' fees shall be allowed unless it concerns one of the nine enumerated exceptions set forth in 11 U.S.C. §§ 502(b)(1)-(9). Because the claim asserted by Travelers had nothing to do with the exceptions set forth in subparagraphs (b)(2)-(9), and the claim was not unenforceable under any agreement or applicable law for a reason other than because it was contingent or unmatured pursuant to subparagraph (b)(1), Travelers' claim would be allowed.

Unlike the *Travelers* case, the Defendants' counterclaims for indemnification for attorneys' fees and costs that arose during the post-petition period would be disallowed under 11 U.S.C. § 502(b)(1) because such claims would be unenforceable against the Debtor as a result of N.Y. Bus. Corp. Law § 513(a). The *Travelers* decision specifically recognized this provision of the Bankruptcy Code as a valid bar to recovery and the Supreme Court's decision in allowing a claim for attorneys' fees in the *Travelers* case is inapposite to the facts of this case. With respect to the first counterclaim, there is no dispute that the attorney's fees and costs the Defendants incurred in defending the Textron Action

arose post-petition as the Debtor filed for bankruptcy relief soon after the Textron Action was commenced and the Defendants filed their Answer to the Textron Action during the post-petition period. Similarly, it is undisputed and clear that any claim for attorneys' fees and costs relating to proceedings before this court arose post-petition and the Defendants have not asserted any claim for attorneys' fees or costs with respect to any other specific proceeding in support of their third counterclaim. As discussed above, because these attorneys' fees and costs arose post-petition and the indemnification provisions in the Note, Redemption Agreement and the Guarantee and Pledge Agreement are unenforceable with respect to the Debtor for the post-petition period under N.Y. Bus. Corp. 513(a), the Defendants' counterclaims for contractual indemnification of attorneys' fees and costs must also fail.

The Trustee also raises the argument that the Note and Redemption Agreement are executory contracts and are deemed rejected by operation of 11 U.S.C. § 365(d)(1) as the Note and Redemption Agreement were not assumed by the Debtor or the Chapter 7 Trustee within 60 days after the order for relief was entered in the bankruptcy case. The Court does not address this argument as there has been no finding on the issue of whether the Note and Redemption Agreement constitute executory contracts and the Court has already found the Note and Redemption Agreement to be unenforceable with respect to the first and third counterclaims under applicable New York state law.

Therefore, summary judgment for the Trustee with respect to the first and third counterclaims is appropriate and those claims shall be dismissed.

III. *Second Counterclaim for Common Law Indemnification of the Textron Action.*

The Defendants' second counterclaim more broadly states that by the Debtor's wrongful action, the Debtor must indemnify the Defendants against any and all damages, including attorneys' fees, they suffered as a result of the Textron Action and that the Defendants are entitled to a judgment in an amount to be determined at trial and alternatively entitled to a set-off against the Trustee's claims. Essentially, under this counterclaim, the Defendants seek indemnification pursuant to New York common law for the attorneys' fees and costs they incurred in defending the Textron Action.

■■■ The Trustee states that the second counterclaim should be dismissed because attorneys' fees are not recoverable "unless authorized by agreement between the parties, statute or court rule." *Blue Ridge Investments, LLC v. Anderson–Tully Company,* 2005 U.S. Dist. LEXIS 244, *24, 2005 WL 44382, *8 (S.D.N.Y.2005). As discussed above, the attorneys' fees and costs incurred by the Defendants in the Textron Action arose post-petition and any contractual obligation, if any, to indemnify the Defendants under the Note and Redemption Agreement for those fees and costs would be unenforceable pursuant to N.Y. Bus. Corp. Law § 513(a). Implied indemnification under common law arises only where the party seeking indemnification has been compelled to pay for another's wrong. *American Transtech., Inc. v. U.S. Trust Corp.,* 933 F.Supp. 1193 (S.D.N.Y.1996). "[T]he Second Circuit has long recognized that a primary wrongdoer must indemnify a party whose liability is secondary or vicarious." *American Home Assurance Com. v. Hapag Lloyd Container Linie, GmbH et. al.,* 385 F.Supp.2d 316, 321 (S.D.N.Y.2005) (citing *Ingersoll Mill-*

*ing Machine Co. v. M/V BODENA,* 829 F.2d 293, 305 (2d Cir.1987)).

■■■ In order for the Defendants to succeed on their second counterclaim, there would have to be a finding that the Defendants incurred costs in defending an action pursuant to which the Debtor is actually to blame. *See Reynolds v. Ciminelli–Walbridge,* 261 A.D.2d 839, 689 N.Y.S.2d 592 (N.Y.App.Div.1999)(indemnification claim for attorney fees and costs permitted against third-party defendant where the party defendants were found liable on summary judgment and the party defendants' cross motion for common-law indemnification against the third-party defendant was previously granted even though the party defendants and the plaintiff eventually entered into a settlement that absolved the party defendants of liability and no monetary judgment was awarded). There needs to be a finding that the Debtor actually committed or is liable for the alleged forgery of Ann Arbore's and Vincent Arbore's signatures by Joseph Gartner which result in the Textron Action being brought against the Arbores. If the Debtor was found liable in the Textron Action, then the Debtor would be liable under common law indemnification for the legal fees incurred by the Defendants in defending the Textron Action regardless of whether judgment was entered in favor of the Defendants in the Textron Action. However, there has been no finding whether the Debtor is to blame for the alleged forged signatures on the guarantees given to Textron because the Textron Action against the Debtor was stayed as a result of the Debtor's bankruptcy filing and the Court does not have any information regarding the current status of the Textron Action against the Debtor or Joseph Gartner. Unless and until the Debtor is found primarily liable for the Joseph Gartner's alleged forgery of

Ann Arbore's and Vincent Arbore's signatures, the Debtor's bankruptcy estate cannot be liable under any indemnification theory for the fees and costs incurred by the Defendants in defending against the Textron Action. As there is a genuine issue of fact concerning whether the Debtor is primarily liable for Joseph Gartner's alleged wrongful conduct, any motion to dismiss the Defendants' second counterclaim is premature.

IV. *Fourth Counterclaim for Common Law Indemnification of the Bankruptcy and Adversary Proceedings and Any Other Proceeding.*

■ With respect to the fourth counterclaim, Defendants similarly seek indemnification based upon the Debtor's alleged wrongful action for any and all damages, including attorneys' fees, the Defendants suffer as a result of any state court action and any federal court action, including this bankruptcy case and this adversary proceeding. As discussed above, there needs to be a finding that the Debtor has committed a wrongful action which caused the Defendants to incur costs defending themselves with respect to these wrongful actions. However, the relief sought in the fourth counterclaim is overly broad and does not identify for the Trustee or the Court the specific wrongdoing by the Debtor or damages for which the Defendants are seeking indemnification. The Defendants have failed to allege any claim for which the Court can grant relief much less provide any statement showing that the Defendants are entitled to relief with respect to such claim. Accordingly, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7012, the fourth counterclaim must be dismissed without prejudice.

*CONCLUSION*

Based upon the foregoing, summary judgment for the dismissal of the first and third counterclaims with prejudice is granted and the Trustee's motion to dismiss the fourth counterclaim is granted without prejudice. The Trustee's motion to dismiss the second counterclaim is denied without prejudice and the Court will schedule a separate evidentiary hearing with respect to the second counterclaim.